UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------X

CANER DEMIRAYAK,

                  Plaintiff.

        -against-

BILL DE BLASIO, in his official capacity as Mayor of the
City of New York, CITY OF NEW YORK, HON.
LAWRENCE MARKS, in his official capacity as Chief
Administrative Judge of the State of New York, STATE OF
NEW YORK, CLIPPER EQUITY, LLC, & 141
LIVINGSTON OWNER, LLC,

                  Defendants.

----------------------------------------------------------------X

**ORIGINAL**

**CV 18 - 4723**

Civil Action No.:

**CIVIL COMPLAINT**  KUNTZ, J.

JURY TRIAL DEMANDED

REYES, M.J.

**RECEIVED**

AUG 2 1 2018

PRO SE OFFICE

## I.   STATEMENT OF FEDERAL-QUESTION AND SUPPLEMENTAL JURISDICTION

1.    This action arises under 42 U.S.C. 12101, *et seq*, (Titles II and III of the Americans with Disabilities Act), 29 U.S.C. 701 & 794 (The Rehabilitation Act of 1973), and the Equal Protection Clause of the XIV Amendment to the United States Constitution, as well as 28 CFR Part 35 (the Regulations implementing Title II), 28 CFR Part 36 (the Regulations implanting Title III) and 28 CFR Part 42, Subpart G (the Regulations implementing The Rehabilitation Act).

2.    This action also arises under N.Y.S. Exec. L. Section 296(2)(a) (The New York State Human Rights Law), N.Y.S. Civil Rights Law Sections 40-c (2) & 40-d (State Civil Rights Law), and Section 8-107(4)(a) of the New York City Administrative Code (The New York City Humans Rights Law). The Court has valid supplemental jurisdiction over said claims pursuant to 28 USC 1367, as the claims are closely related to the federal-question claims brought pursuant to the Americans with Disabilities Act (hereinafter "ADA") and section 504 of the Rehabilitation Act of 1973 (hereinafter "RA").

3.    As per 42 U.S.C. 12202, New York State and its subdivisions/agencies, administrative bodies, and judicial branches, are not immune from this action pursuant to the Eleventh Amendment of the Constitution of the United States.

4.    The governmental defendants are not also immune from suit pursuant to the RA based upon their receipt of federal funding.

5.    Pursuant to the New York State Unified Court System Budget for 2018-19, approximately $13.5 million in federal funds have been accepted.

6. Pursuant to the Report of the Finance Division on the Fiscal 2018 Preliminary Budget for Courts and Legal Services by the NYC City Council, approximately $22 million of federal funds have been received for the operation of the courts located within New York City.

7. Additionally, the State government defendants are not immune from suit under either of the federal statutes inasmuch as their conduct violates the plaintiff's Equal Protection rights under section 1 of the 14th Amendment, along with violating Title II of the ADA.

8. Finally, this suit falls within the confines of the *Ex Parte Young* exception to suits seeking prospective injunctive relief against State government officials sued in their official capacity, i.e., defendant Hon. Lawrence K. Marks (hereinafter "CAJ"), who has been sued in his official capacity as the Chief Administrative Judge of New York State[1]. Thus, there is no State immunity from that part of the suit seeking injunctive relief pursuant to the ADA and RA.

## II. STANDING

9. Plaintiff's instant complaint raises a valid and ripe case or controversy as per Article 3 Section 2 of the United States Constitution.

10. As indicated herein and below, plaintiff has been injured in the past under the ADA, RA, and State and City statutes and through the present time. Specifically, plaintiff was discriminated against on the following dates: including but not limited to, September 3, 2015, May 19, 2016, June 2, 8, 9, and 27, 2016, July 7 and 12, 2016, October 2016, and December 21, 2017.

11. Such discrimination has deterred the plaintiff from attempting to access the courthouses specified below. Plaintiff intends to return to such courthouses several times within the next year and indefinitely and is otherwise deterred from doing so due to the presence of architectural barriers. A plaintiff claiming violations of the ADA need not engage in a futile gesture in attempting to access clearly inaccessible facilities and parts thereof. Deterrence is an established cognizable injury.

12. Furthermore, the court can redress plaintiff's injury by a favorable decision, thereby ordering the defendants to, *inter alia*, remove architectural barriers and award money damages for the discrimination.

13. This suit has been brought within the applicable statute of limitations period for the federal claims (3 years) and local claims (1 years). Even if the statute has arguably run on some local or federal claims, the situations described herein constitute continuing violations for which the statute of limitations cannot expire. The deterrence faced by plaintiff results in a continuing violation. The events described herein merely give examples as to how the continuing violations have harmed plaintiff previously and will harm plaintiff in the future continuously.

---

[1] This official title also encompasses the duties of a member/chairperson of the New York State Court Facilities Capital Review Board as per the Public Authority Law. The CAJ is sued in such additional official capacity.

## III.  THE PARTIES INVOLVED

### a.  THE PLAINTIFF

14.     The plaintiff, CANER DEMIRAYAK, is a resident of Nassau County, New York. Plaintiff is an attorney admitted to practice law in the State of New York. Plaintiff practices personal injury law in New York City on a weekly basis. Plaintiff is proceeding *pro se* as well as on behalf of all other similarly situated persons with disabilities who require the use of a wheelchair. Any injunctive relief issued in this action will benefit each and every other persons with mobility impairments and disabilities. However, this is not a class action suit since the abhorrent status of the courthouses and the lack of disability access has deterred persons with disabilities from becoming lawyers and litigators, rendering class certification difficult.

15.     Plaintiff is a person with a qualified disability in accordance with the ADA, RA, and New York State and City Human Rights Laws. Specifically, plaintiff suffers from Becker's Muscular Dystrophy, which has confined the plaintiff to a motorized wheelchair. Plaintiff uses a motorized wheelchair everyday and each time he attempts to access the courthouses.

### b.  THE DEFENDANTS

16.     The defendant BILL DE BLASIO (hereinafter "MAYOR") is being sued herein solely in his official capacity as Mayor of the City of New York. Among other executive roles, this defendant is deemed the chief executive officer of the City of New York for the purposes of submitting capital plans to the Court Facilities Capital Review Board (hereinafter "CFCRB").

17.     MAYOR is also charged with ensuring that the courthouses located within his locality are suitable and sufficient for the business of the courts, which includes ensuring the courthouses are accessible to the physically handicapped as per New York State Rules of the Chief Judge Rule 34.0, *et seq*.

18.     The defendant, CITY OF NEW YORK, (hereinafter "CITY") is a public municipal entity duly formed under the laws of the State of New York. The CITY OF NEW YORK is the current owner of the buildings located at 927 Castleton Avenue in Staten Island, New York, 88-11 Sutphin Boulevard, in Queens, New York, 851 Grand Concourse in Bronx, New York and 60 and 80 Centre Street in New York, New York.

19.     The CITY relies upon the Department of Citywide Administrative Services (hereinafter "DCAS") in maintaining and operating the aforementioned courthouses.

20.     The CITY also from time to time relies upon the Department of Design and Construction (hereinafter "DDC") in designing new courthouses and renovating existing facilities, often by contract with third party engineers and architects.

21.     Moreover, the defendant, CITY, leases the building at 141 Livingston Street from its private owner and is otherwise responsible for the maintenance and operation of the court program at 141 Livingston Street in Brooklyn, New York.

22.     Upon information and belief, the CITY receives federal financial assistance.

23.     The defendant CAJ is being sued herein solely in his official capacity as the Chief Administrative Judge of the State of New York and as a member/chairperson of the CFCRB.

24.     He is also sued herein as the chief official in charge of the Office of Court Administration (hereinafter "OCA"), which was created by the Chief Administrative Judge as per Judiciary Law section 212.

25.     Among other leadership roles, CAJ is charged with all administrative affairs of operating the State courts as defined in section 212. CAJ is permitted to delegate many of his authorities to deputy chief administrators. Pursuant to Rules of the Chief Judge Rule 81.1, CAJ may appoint a deputy chief administrator for management support, who deals with all affairs relating to court facilities.

26.     CAJ is obligated to ensure the courthouses are suitable and sufficient for the business of the courts and may approve or deny capital plans that do not effect a substantial change in the courthouses without the need for approval by the court capital facilities review board.

27.     CAJ has a direct connection to the enforcement of the ADA and RA with respect to court facilities as indicated above and established by Judiciary law section 212 and public authority law 1680-c. His inactions, omissions, direct conduct, and/or refusal to ensure the Brooklyn courthouse provides meaningful access to plaintiff makes him liable herein.

28.     The defendant, STATE OF NEW YORK, (hereinafter "STATE") is a public entity subject to the requirements of the ADA and RA.

29.     According to Judiciary Law section 39 all judicial and non-judicial employees of the courts, in any locality or municipality, are deemed employees of the State of New York. As described herein, the STATE is implicated in each instance plaintiff was denied meaningful access vicariously for any of its employees in the court system. This is regardless as to whether the individuals are employed by OCA or the Unified Court System because section 39 designates them employees of the STATE.

30.     The STATE from time to time relies upon the Dormitory Authority in inspecting, surveying, renovating, altering and designing courthouses in order to comply with disability access requirements on behalf of a particular locality or municipality.

31.     The STATE is also fiscally responsible for the maintenance, cleaning, minor repairs and renovations of the court facilities as per Judiciary Law section 39-b. Minor repairs is defined as including renovations to the interior of the courthouses. The STATE is required to exercise its obligations by contract with the particular locality in which a courthouse is situated or a third party. There was a contract between the STATE and CITY as per section 39-b in effect during the dates and times plaintiff was denied meaningful access.

4

32.     The STATE receives federal funding and issues same to the Unified Court System and OCA for use in court programs.

33.     The STATE also issues federal funding it receives to the CITY, and has a supervisory obligation under the RA to ensure the funds issued to the CITY are used to achieve accessibility compliance. Specifically, there is an agreement between the STATE and CITY for the provision of court facilities pursuant to the CFCRB. The STATE has been provided with all plans and proposals before such have been acted on by the CITY but still failed to ensure ADA or RA compliance would be achieved.

34.     The STATE relies upon the OCA in attempting to satisfy its obligations pursuant to the ADA and RA. Specifically, OCA uses an ADA Liaison program in dealing with accessibility issues within courthouses.

35.     The ADA Liaison program is fundamentally flawed as it does not provide for an effective and proper grievance process as required by the Regulations implementing Title II. Although written denials of requests for accommodations are required by the Title II regulations, same are often not issued. Moreover, there is no adequate way to seek review of denials of requests for accommodations and there is no remedial process in place.

36.     The plaintiff was never provided with any written denials of requests for accommodations as per the Liaison program. The Liaison program failed to ensure plaintiff had meaningful access as described more fully herein.

37.     To the extent that any denial of meaningful access was caused by a judicial decision, there is no adequately way to appeal same as the New York CPLR and rules of Appellate Practice render such appeal by permission only. There is no right to challenge a denial of a judicial accommodation in New York State in direct contravention of the ADA.

38.     The ADA Liaison program failed plaintiff and would not have helped anyway in each of the instances as described herein.

39.     The defendant CLIPPER EQUITY, LLC, is a domestic limited liability company formed in the State of New York on September 19, 2006. This defendant is the parent/shell company of 141 Livingston Owner, LLC.

40.     Upon information and belief CLIPPER EQUITY, LLC owns the building located at 141 Livingston Street in Brooklyn, New York. This defendant is party to a lease agreement/contract with the CITY relating to such building.

41.     The defendant 141 LIVINGSTON OWNER, LLC, is a foreign limited liability company formed in the State of Delaware on June 27, 2014. This defendant is registered in New York State and authorized to conduct business therein. The registered agent for service of process in the State of New York is Clipper Equity, LLC.

42. Upon information and belief 141 LIVINGSTON OWNER, LLC owns the building located at 141 Livingston Street In Brooklyn, New York. This defendant is party to a lease agreement/contract with the CITY relating to such building.

## IV. THE COURT FACILITIES IN VIOLATION OF THE DISABILITY ACCESS LAWS

43. The Civil Court of the City of New York, County of Kings is located at 141 Livingston Street, Brooklyn, New York. This building was built in 1959. The most recent certificate of occupancy (hereinafter "CO") was issued on November 30, 1973. A temporary CO expired on August 10, 2016. This building is owned by 141 Livingston Owner, LLC and/or Clipper Equity, LLC. The CITY/STATE rents or leases this building from the private owner.

44. The Civil Court of the City of New York, County of Richmond is located at 927 Castleton Avenue, Staten Island, New York. This building was built in 1929. Upon information and belief, this building is owned by the City of New York. There is no elevator, lift or ramp access to the second floor of this courthouse.

45. Although the governmental defendants were aware of the status of 927 Castleton Avenue it was not included in a $134 million renovation program for courthouses located in Staten Island, that began on or about 2007. *See* https://a810-bisweb.nyc.gov.

46. The Supreme Court of the State of New York, County of Queens is located at 88-11 Sutphin Boulevard, Queens, New York. This building was built in 1936. The most recent certificate of occupancy was issued on August 21, 1962. This building is owned by the City of New York.

47. A renovation/alteration plan was submitted by the CITY to the CFCRB in 2005, which was recommended for approval by the former Chief Administrative Judge and approved by the Board.

48. Pursuant to such plan the CITY conducted a $1.5 million structural renovation/alteration project in March 2016 for the basement to seventh floor of 88-11 Sutphin. The plans and documents relating to such may be found on the CITY's Department of Buildings Information System Database at https://a810-bisweb.nyc.gov.

49. However, such alterations to 88-11 Sutphin did not strictly comply with the ADA Standards for Accessible Design (hereinafter "ADAAD") for such new construction/alterations to primary function areas and path of travel as the CITY relied upon the ANSI/ICC standards instead. The substantial differences with respect to alterations of areas containing primary functions can be found on the United States Access Board's website at www.access-board.gov/guidelines-and-standards/buildings-and-sites/about-the-ada-standards/background/ibc-comparison.

50. The failure to comply with such standards when performing alterations requires the defendants to correct the deficiencies and make the altered facility accessible in accordance

with the ADAAD, as mandated by the regulations implementing Title II of the ADA. *See* 28 CFR 35.151(c)(5).

51.     The Supreme and Civil Courts of the State and City of New York, County of Bronx are located at 851 Grand Concourse, Bronx, New York. This building was built in 1933. The certificate of occupancy was issued on January 28, 1942. This building is owned by the City of New York.

52.     A $60.9 million renovation/alteration plan was submitted by the CITY to the CFCRB in 2005, which was recommended for approval by the former Chief Administrative Judge and approved by the Board.

53.     The STATE Dormitory Authority managed the renovation project on the CITY's behalf.

54.     Pursuant to such plan the STATE and CITY, between 2008 and 2011 conducted structural renovation/alteration projects totaling at least $10 million for the entire building at 851 Grand Concourse. The plans and documents relating to such may be found at https://a810-bisweb.nyc.gov.

55.     However, such alterations to 851 Grand Concourse did not strictly comply with the ADAAD for such new construction/alterations to primary function areas and path of travel as the CITY/STATE relied upon the ANSI/ICC standards instead.

56.     The failure to comply with such standards when performing alterations requires the defendants to correct the deficiencies and make the altered facility accessible in accordance with the ADAAD, as mandated by the regulations implementing Title II of the ADA. *See* 28 CFR 35.151(c)(5).

57.     The Supreme Court of the State of New York, County of New York is located at 60 Centre Street, New York, New York and also encompasses 80 Centre Street, New York, New York. The address of 80 Centre Street is interchangeable with 141 Worth Street (same building). These buildings at 60 and 80 Centre were built in 1925 and 1930, respectively. Upon information and belief, these buildings are owned by the City of New York.

58.     A renovation/alteration plan for each building was submitted by the CITY to the CFCRB in 2005, which was recommended for approval by the former Chief Administrative Judge and approved by the Board.

59.     Pursuant to such plan the STATE and CITY, between 2006 and 2016 conducted structural renovation/alteration projects totaling at least $4,966,419 at 80 Centre, which including demolition work and moving of partitions, and the installation of a new toilet room. The plans and documents relating to such may be found at https://a810-bisweb.nyc.gov.

60. However, such alterations did not strictly comply with the ADA Standards for Accessible Design for such new construction/alterations to primary function areas and path of travel as the CITY relied upon the ANSI/ICC standards instead.

61. The failure to comply with such standards when performing alterations requires the defendants to correct the deficiencies and make the altered facility accessible in accordance with the ADAAD, as mandated by the regulations implementing Title II of the ADA. *See* 28 CFR 35.151(c)(5).

62. Notably, there is **still no wheelchair accessible entrance to the courthouse on 80 Centre Street,** aside from a poorly maintained wheelchair lift on one of the inaccessible staircases.

## V.   STATEMENT OF FACTS APPLICABLE TO ALL PARTIES AND CAUSES OF ACTION

### A.  Brooklyn Civil – 141 Livingston Street

63. In September 2015, the plaintiff visited the courthouse located at 141 Livingston Street in Brooklyn, New York for the purpose of handling motions on the eighth floor.

64. It quickly became apparent that there were no public wheelchair accessible bathrooms in this courthouse. During this visit an individual advised he could unlock the employee bathroom for him which had enough space to accommodate a wheelchair.

65. However, several months later when the plaintiff sought to obtain access to the employee bathroom on the third floor, an individual at the clerk's desk refused to provide plaintiff with a key or any access.

66. With respect to the eighth-floor motion part it is not wheelchair accessible as a large bar blocks the entrance to the well of the Court and a counsel table eliminated any accessible route to the judge's bench.

67. Since at least September 2015 and more recently on July 12, 2016, other helpful attorneys were required to move the counsel table on the 8th floor out of the way to permit plaintiff access to argue a motion.

68. With respect to the third-floor trial assignment part, the doors to enter the courtroom are not wide enough to adequately accommodate a wheelchair. There is no designated area for a wheelchair user to park his chair in the seating area.

69. The jury selection rooms are too small to accommodate a wheelchair.

70. Plaintiff was within this courthouse again in May 2018 and the same situation exists. There is still no public wheelchair accessible toilet and incorrect signage on each bathroom door misrepresents the lack of accessibility therein.

71.     With respect to trial parts on the seventh, eighth, tenth, and eleventh, floors of the courthouse there is insufficient space for a wheelchair user to properly navigate throughout the courtroom, including between the counsel tables, jury box, and conference rooms.

72.     In 2016 plaintiff was faced with these barriers and had to try bench and jury trials at least 4 times. More specifically, in October 2016, the plaintiff experienced this while conducting a jury trial on the eighth floor. Plaintiff could not use the public bathroom during this trial since it was not accessible.

73.     Plaintiff was made to wait 15 to 20 minutes for an elevator on various floors of the courthouse dozens of times while working in this courthouse. It was extremely embarrassing to be faced with an elevator full of people, only to wait for another full elevator. Several elevators do not work or break down frequently. There is a serious elevator issue in this courthouse that essentially renders it inaccessible.

74.     Currently and in the future plaintiff is scheduled to handle property damage cases and 325-d case transfers from the Kings County, Supreme Court in 141 Livingston Street on a monthly basis.

### B. Staten Island Civil – 927 Castleton Avenue

75.     The plaintiff visited the courthouse located at 927 Castleton Avenue on June 27, 2016 for the purpose of proceeding to a bench trial in a medical necessity case.

76.     Days prior to this appearance, plaintiff had confirmed his expert witness for trial. In the morning of June 27, 2016 plaintiff met with his expert witness on the first floor of the courthouse and waited near the jury trial part. Moments later an attorney approached plaintiff and asked if he was handling a particular bench trial. Plaintiff responded he was handling the trial. In response the attorney advised there was no elevator access to the second floor bench trial part.

77.     Plaintiff then asked court officers near the metal detectors if there was any access to the second floor and they advised there was no way for a wheelchair to get to the second floor.

78.     The plaintiff waited with his expert witness for 2 ½ hours until such time a court employee advised plaintiff to follow him into the presiding judge's chambers on the first floor. During this chambers meeting a "trial" was held with a court reporter present. However, plaintiff never had access to the second floor during his visit. There were no other courtrooms available for the trial.

79.     The events of June 27, 2016 have deterred plaintiff from taking a case at this courthouse until it is made wheelchair accessible. Plaintiff refuses to engage in a futile effort to access the courthouse after experiencing such extreme discrimination.

80.     Upon information and belief inside the State Island Civil Court the bathrooms, courtrooms, judges' chambers, jury selection rooms and other areas violate the ADA and Rehab Act.

### C. Queens Supreme – 88-11 Sutphin Boulevard

81.     The plaintiff visited the courthouse located at 88-11 Sutphin Boulevard on June 9, 2016 for the purpose of entering judgment on a case in the clerk's office.

82.     Plaintiff went to the front of the building and noticed a large staircase with no ramp access. A passerby then told plaintiff he should go to the back parking lot to enter the building. Thus, plaintiff began to roll down the block and into the parking lot. An officer in a security booth pointed to the back door of the court building

83.     When plaintiff reached this door an officer opened the door and requested if plaintiff needed help going down the ramp. When plaintiff observed this ramp he noticed it was extremely steep and looked too dangerous to go down in his chair. The officer recommended plaintiff go down the ramp backwards but plaintiff refused in fear of flipping over. Instead, the plaintiff went down the ramp forward very slowly to avoid falling forward.

84.     Once inside the building plaintiff waited a long time for an elevator which took him to the main level. Plaintiff then entered the clerk's office and noticed the doors and entryway was very narrow.

85.     Plaintiff is now deterred from returning to this Courthouse or conducting law practice therein.

86.     Upon information and belief the third floor motions/compliance part of this building is not sufficiently wheelchair accessible.

87.      Further, upon information and belief inside the Queens Supreme Court the bathrooms, courtrooms, judges' chambers, jury selection rooms and other areas violate the ADA and Rehab Act.

### D. Bronx Civil and Supreme – 851 Grand Concourse

88.     Plaintiff visited the courthouse located at 851 Grand Concourse for the purpose of handling motions on the fourth-floor civil court No-Fault part in September and October 2015.

89.     It quickly became apparent that the door was not ADA compliant. Upon entering the courtroom, it was clear there was insufficient space in the main aisle of the courtroom and that there was no designated seating for wheelchair users. There are also swinging doors to enter the well of the Court and inadequate accessible routes throughout the courtroom.

90.     Plaintiff attempted to utilize a public bathroom on the fourth floor and realized it was not wheelchair accessible. Thus, the plaintiff rolled around the fourth floor until he located

an officer siting at a desk. The officer advised he would open the employee's bathroom, which was wheelchair accessible. After waiting for several minutes, the officer opened the bathroom.

91.     More recently plaintiff conducted bench trials in the aforementioned courtroom on June 2 and 8, 2016 and had difficulty navigating the courtroom and conducting the trial. There was also no access to a public bathroom.

92.     Additionally, on October 29, 2015, plaintiff was assigned to conduct depositions of two claimants in the Bronx Supreme clerk's office EBT area. However, the EBT area is on the second floor of the clerk's office which is only accessible via a staircase. There is no accessible route provided to the EBT area.

93.     Instead, the plaintiff was made to conduct the depositions on the first floor of the clerk's office in the middle of a very noisy and busy office. The court reporter had a very difficult time hearing the testimony due to the noise. Additionally, random people kept interrupting the deposition. This was one of the worst experiences plaintiff has ever had when practicing law in the New York State Courts.

94.     Plaintiff is now deterred from returning to this Courthouse or conducting law practice therein.

95.     Upon information and belief inside the Bronx Supreme and Civil courthouse the bathrooms, courtrooms, judges' chambers, jury selection rooms and other areas violate the ADA and Rehab Act.

### E.  Manhattan Supreme – 60 & 80 Centre Street

96.     Between September 2015 and August 2016 plaintiff handled a personal injury case on behalf of a plaintiff before a judge located at 80 Centre Street. During the preliminary conference on this case plaintiff was advised that the only access inside the court building was via a stair lift.

97.     However, on the date of the preliminary conference of September 3, 2015 the lift was out of commission.

98.     Thus, plaintiff waited outside while his adversary went inside the courtroom, obtained an Order form and began to draft it. The adversary attorney then presented plaintiff with a copy to sign outside.

99.     Plaintiff was unable to participate in a full preliminary conference at 80 Centre Street. Plaintiff had no access to the courthouse located at 80 Centre Street that day.

100.     No employee of the CITY or STATE government offered plaintiff any accommodations. As a relatively new lawyer with little experience with the courts at this time plaintiff was not even aware of the purported ADA Liaison program on that date.

101.    On May 19, 2016, the plaintiff presented to 80 Centre Street for a compliance conference on the aforementioned personal injury case. Plaintiff waved to the officer at the desk up the stairs and requested someone operate the stair lift. While waiting for the lift people entering and exiting the courthouse asked if they could help plaintiff. After waiting for an extended period of time an employee of DCAS slowly lowered the lift. Plaintiff then rolled onto same and was slowly brought into the courthouse.

102.    When plaintiff entered the courtroom he was faced with an extremely difficult and narrow gallery and well of the court. When plaintiff's case was called two tables had to be moved out of the way for him to reach a court attorney handling the conference.

103.    Immediately after the conference, the plaintiff was scheduled to defend his client at a deposition across the street in the court building at 60 Centre Street. Plaintiff's client was with him, but plaintiff had no idea of how to enter 60 Centre Street. After walking around the building with his client, a court officer approached plaintiff and advised of the back entrance. Plaintiff observed a sign that improperly referred to the disabled ("Physically Challenged Entrance"). He walked through the door and was confronted with a very narrow and dark path to an elevator. When plaintiff finally entered the court building he noticed that the courthouse elevators were extremely narrow. At all times on May 19, 2016, plaintiff had his client with him. The inaccessible features of the building caused extensive delay.

104.    Plaintiff is now deterred from returning to these Courthouses or conducting law practice therein.

105.    Upon information and belief inside the Manhattan Supreme courthouses the bathrooms, courtrooms, judges' chambers, jury selection rooms and other areas violate the ADA and Rehab Act.

### AS AND FOR A FIRST CAUSE OF ACTION –
### VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT

**VI.    THE CITY AND STATE GOVERNMENTAL DEFENDANTS' FAILURE TO MAKE THE COMPLAINED OF COURTHOUSES, WHEELCHAIR ACCESSIBLE VIOLATES TITLE II OF THE FEDERAL AMERICANS WITH DISABILITIES ACT**

106.    Plaintiff repeats and realleges those allegations of the complaint marked and designated herein as paragraphs "1" through "105" with the same force and effect as if herein set forth at length and further alleges that:

107.    Pursuant to 42 U.S.C. 12132, "[N]o…individual…shall, by reason of such disability be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by such entity."

108.    It is deemed discriminatory to afford an individual on the basis of disability with the opportunity to participate in or benefit from the aid, benefit, or service (1) not equal to that afforded to others, (2) not as effective in affording equal opportunity to obtain the same result,

benefit of achievement, or (3) different or separate from that provided to others as per 28 CFR 35.130(a) and (b).

109.   It is also discriminatory for a public entity to (1) fail to remove architectural barriers that are structural in nature, in existing facilities, where such removal is necessary to ensure its services, programs, or activities are readily accessible and where same would not constitute an undue burden, (2) fail to take such steps as may be necessary to ensure no individual with a disability is excluded, denied services, segregated, or otherwise treated differently from other individuals because of the absence of auxiliary aids or services, including the failure to provide services, programs or activities in the most integrated setting possible, (3) failure to make reasonable modifications in the policies, practices or procedures of the public entity, or (4) failing to use alternative methods to avoid discrimination when all other options are not readily achievable, as per 28 CFR 35.150(b)(1).

110.   In removing structural/architectural barriers, a public entity is required to conform its construction to the ADA Design Standards, promulgated by the Department of Justice. The most current design standards were issued in 2010. With respect to certain construction performed before the effective date of the most recent ADAAD standards, the 1991 Standards would be applicable. If construction or renovations are conducted that do not comply with the applicable standards in effect at the time the project commences the public entity is mandated to correct the deficiencies and make the altered facility accessible in accordance with the ADAAD.

111.   With respect to alterations to an existing facility, it is unlawful discrimination to fail to "[M]ake alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs as per 28 CFR 35.151(b)(1).

112.   Moreover, it is unlawful and discriminatory for a public entity to undertake an "alteration that affects or could affect usability of or access to an area of the facility containing a primary function, without also making the alterations in such a manner that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities where such alterations to the path of travel or the bathrooms, telephones, and drinking fountains serving the altered area," as per 28 CFR 35.151(b)(4).

113.   To wit, via discovery in the action of *Demirayak v City of New York*, 17-cv-5205 (WFK) (RER) (E.D.N.Y. 2017), the CITY admits that it uses the ANSI/ICC standards and has historically use such standards, instead of the ADA standards, which are substantially different.

114.   Defendants, MAYOR, CITY, CAJ, and STATE are liable herein as (1) plaintiff is a person with a qualified disability inasmuch as he suffers from Becker's and uses a wheelchair, (2) they are subject to Title II of the ADA with reference to the existing court facilities listed herein in Brooklyn, Bronx, Queens, Manhattan, and Staten Island, along with any altered areas of such facilities, and (3) plaintiff has been discriminated against and denied meaningful access to the court facilities for the reasons set forth in paragraphs "63" to "105" above, and because

13

such defendants conducted alterations and renovations in a discriminatory manner by not strictly complying with the ADAAD and Title II regulations.

115. Furthermore, plaintiff has been denied meaningful access in light of the allegations herein, including but not limited to CAJ and the STATE's supervision and operation of court facilities and the ADA Liaison program, along with the City Defendants' failures to remove architectural barriers and provide services in the most integrated setting possible.

116. The ADA Liaison program implemented by the STATE and CAJ failed plaintiff and never assisted him in receiving a reasonable accommodation.

117. As described above, plaintiff was totally excluded from court proceedings on various occasions and was forced to conduct court proceedings in hallways or conference rooms instead of in courtrooms.

118. Additionally, the STATE approved plans by the CITY to renovate courthouses which violated the ADA.

119. Moreover, upon information and belief MAYOR, CITY, CAJ and STATE, are further liable as they have conducted substantial alterations without ensuring that, to the maximum extent feasible, the altered areas are wheelchair accessible, including all areas of primary function in the altered areas. Upon information and belief, the defendants have conducted several alterations since 1991 and through 2016 but have still failed to ensure such altered areas are, to the maximum extent feasible, wheelchair accessible.

120. Finally, MAYOR, CITY, CAJ and STATE have violated both Title II of the ADA and the Equal Protection clause to the Fourteenth Amendment, rendering the State Defendants directly liable irrespective as to any claims of immunity. (Plaintiff repeats and realleges herein the allegations listed below in paragraphs "139" through "148" with the same force and effect as if set forth herein).

121. As such, plaintiff demands injunctive and monetary relief against the governmental defendants in accordance with their violation of Title II of the ADA.

## AS AND FOR A SECOND CAUSE OF ACTION –
## VIOLATION OF THE REHABILITATION ACT

**VII.** **THE CITY AND STATE GOVERNMENTAL DEFENDANTS' FAILURE TO MAKE THE COMPLAINED OF COURTHOUSES WHEELCHAIR ACCESSIBLE, VIOLATES SECTION 504 OF THE REHABILITATION ACT**

122. Plaintiff repeats and realleges those allegations of the complaint marked and designated herein as paragraphs "1" through "121" with the same force and effect as if herein set forth at length and further alleges that:

123. Pursuant to 29 U.S.C. 794, "No otherwise qualified individual with a disability...shall solely by reason of...his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

124. It is deemed discriminatory to afford an individual on the basis of handicap with the opportunity to participate in or benefit from the aid, benefit, or service (1) not equal to that afforded to others, (2) not as effective in affording equal opportunity to obtain the same result, benefit of achievement, or (3) different or separate from that provided to others as per 42 CFR 42.503.

125. It is also discriminatory for a public entity to (1) fail to remove architectural barriers that are structural in nature, in existing facilities, where such removal is necessary to ensure its services, programs, or activities are readily accessible and where same would not constitute an undue burden, (2) fail to take such steps as may be necessary to ensure no individual with a disability is excluded, denied services, segregated, or otherwise treated differently from other individuals because of the absence of auxiliary aids or services, including the failure to provide services, programs or activities in the most integrated setting possible, (3) failure to make reasonable modifications in the policies, practices or procedures of the public entity, or (4) failing to use alternative methods to avoid discrimination when all other options are not readily achievable, as per 42 CFR 42.521.

126. It is further discriminatory to perform alterations to an existing facility that, do not to the maximum extent feasible, make the altered area accessible as per 42 CFR 42.522(a).

127. Since the RA and Title II of the ADA are viewed coextensively, in removing structural/architectural barriers, a public entity is required to conform its construction to the ADAAD, promulgated by the Department of Justice. The most current design standards were issued in 2010. With respect to certain construction performed before the effective date of the most recent ADAAD standards, the 1991 Standards would be applicable.

128. If construction or renovations are conducted that do not comply with the applicable standards in effect at the time the project commences the public entity is mandated to correct the deficiencies.

129. However, the RA has greater requirements for alterations/renovations because the exceptions and safe harbors found within the Title II regulations are not also adopted with respect to the Rehabilitation Act.

130. Upon information and belief MAYOR, CITY, CAJ and STATE violated RA, by approving certificates of occupancy after the effective date of the RA for the complained of courthouses herein, i.e., Brooklyn Civil, Queens Supreme, Staten Island Civil, Manhattan Supreme, and Bronx Supreme and Civil, which were not in compliance with 504.

131.    The governmental defendants receive federal funding but have failed to ensure their court facilities are in compliance with the mandates of the RA and implementing regulations.

132.    The governmental defendants failed to ensure the alterations/renovations of altered areas were made fully accessible.

133.    The COs for the complained of courthouses are still in effect as and constitute a continuing violation of RA.

134.    Aside from the COs, the physical structure of the complained of courthouses violates the RA. The governmental defendants failed to choose among the alternative forms of accommodation providing services in the most integrated setting process.

135.    The allegations herein establish that plaintiff is a person with a qualified disability, that the defendants are subject to RA with reference to existing facilities and the altered areas of such facilities based on their acceptance of federal funding, and that plaintiff has been discriminated against and denied meaningful access when practicing law in the Brooklyn Civil, Staten Island Civil, Queens Supreme, Manhattan Supreme, and Bronx Supreme and Civil courthouses as alleged above in paragraphs "63" through "105."

136.    The STATE and CAJ have failed in their supervisory role with respect to federal funding provided to the CITY.

137.    The allegations herein also establish that plaintiff has been denied the benefits of and has been discriminated against a program receiving Federal financial assistance on numerous discrete times and dates. Governmental defendants have run afoul of section 504 by failing to remove architectural barriers as such removal is necessary to prevent discrimination. Plaintiff's rights were violated under section 504 with reference to the same standards applicable to Title II and referenced herein and above.

138.    As such, plaintiff demands injunctive and monetary relief against the State and City defendants in accordance with their violation of 504 and deliberate indifference, since the State and City Defendants knew of the accessibility issues alleged herein and did nothing about them, and purposefully failing to remedy the issues during alterations/renovations, unreasonably subjecting the government to liability.

## AS AND FOR A THIRD CAUSE OF ACTION –
## VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE XIV AMENDMENT
## TO THE UNITED STATES CONSTITUTION

**VIII.**   **THE CITY AND STATE GOVERNMENTAL DEFENDANTS' FAILURE TO MAKE THE COMPLAINED OF COURTHOUSES WHEELCHAIR ACCESSIBLE, VIOLATES THE EQUAL PROTECTION CLAUSE OF THE XIV AMENDMENT TO THE UNITED STATES CONSTITUTION**

139.   Plaintiff repeats and realleges those allegations of the complaint marked and designated herein as paragraphs "1" through "138" with the same force and effect as if herein set forth at length and further alleges that:

140.   Pursuant to Section 1 of the XIV Amendment: "No state shall…deny to any person within its jurisdiction the equal protection of the laws.

141.   Plaintiff, a fully-fledged attorney in a wheelchair, has been intentionally treated differently from other lawyers, that are similarly situated, and there is no rational basis for the different treatment.

142.   There is an extremely high degree of similarity between plaintiff and other fellow lawyers practicing in the courthouses in Brooklyn, Queens, Manhattan, Staten Island, and Bronx. Plaintiff performs each and every same task as any other lawyer.

143.   Plaintiff travels to court independently, attends calendar calls, participates in court conferences, argues motions, participates in hearings, selects juries, and conducts all aspects of full-blown trials. Plaintiff even transports/carries any and all required legal papers. Plaintiff is not given any special treatment or any less obligations/responsibilities that other lawyers, all of whom are similarly situated to the plaintiff.

144.   As such, no rational person could regard the circumstances of plaintiff to differ from those of a comparator fellow lawyer to a degree that would justify the different treatment on the basis of a legitimate government policy; there is no legitimate policy warranting the disparate treatment of an attorney in a wheelchair.

145.   Further, the similarity in circumstances of plaintiff and fellow lawyers, as indicated above and herein, are sufficient to exclude the possibility of any mistake by the defendants.

146.   Finally, plaintiff has been treated differently from other similarly situated lawyers based on the defendants intentional and/or purposeful discrimination by failing to remove architectural barriers, not providing meaningful access, not providing sufficient/proper reasonable accommodations, and not providing services in the most integrated setting possible.

147. Plaintiff thus, alleges that the governmental defendants have denied the plaintiff equal protection of the laws as described more fully herein and violated Title II of the ADA and RA.

148. As such, plaintiff demands injunctive and monetary relief against the governmental defendants in accordance with the violation of plaintiff's Equal Protection rights along with the ADA and section 504 violations as per *United States v Georgia*.

### AS AND FOR A FOURTH CAUSE OF ACTION – VIOLATION OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT

### IX. CLIPPER EQUITY, LLC AND 141 LIVINGSTON STREET OWNER, LLC'S FAILURE TO MAKE THE BUILDING LOCATED AT 141 LIVINGSTON STREET, BROOKLYN, NEW YORK, WHEELCHAIR ACCESSIBLE VIOLATES TITLE III OF THE ADA

149. Plaintiff repeats and realleges those allegations of the complaint marked and designated herein as paragraphs "1" through "148" with the same force and effect as if herein set forth at length and further alleges that:

150. Pursuant to 42 U.S.C. 12182, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."

151. It is deemed discriminatory to afford an individual on the basis of disability with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation (1) not equal to that afforded to others or (2) different or separate from that provided to other individuals. 42 U.S.C. 12182(b)(1)(A).

152. It is also discriminatory for a place of public accommodation to (1) fail to remove architectural barriers that are structural in nature, in existing facilities, where such removal is readily achievable, (2) fail to take such steps as may be necessary to ensure no individual with a disability is excluded, denied services, segregated, or otherwise treated differently from other individuals because of the absence of auxiliary aids or services, including the failure to provide services, programs or activities in the most integrated setting possible, (3) failure to make reasonable modifications in the policies, practices or procedures of the public entity, or (4) failing to use alternative methods to avoid discrimination when all other options are not readily achievable. 42 U.S.C. 12182(b)(2)(A).

153. In removing structural/architectural barriers, a place of public accommodation is required to conform its construction to the ADAAD, promulgated by the Department of Justice. The most current design standards were issued in 2010. However, the older 1991 standards may also be applicable depending on the age of the building and time of the renovations.

154. With respect to alterations to an existing facility that affect or could affect the usability of the facility, it is unlawful discrimination to fail to "[M]ake alterations in such a

manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs. 42 U.S.C. 12183(a)(2).

155.    Moreover, it is unlawful and discriminatory for a place of public accommodation to undertake an alteration that affects or could affect usability of or access to an area of the facility containing a primary function, without also making the alterations in such a manner that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities where such alterations to the path of travel or the bathrooms, telephones, and drinking fountains serving the altered area are not disproportionate to the overall alterations in terms of cost and scope. 42 U.S.C. 12183(a)(2).

156.    Defendants, CLIPPER EQUITY, LLC, 141 LIVINGSTON OWNER, LLC, and DAVID BISTRICER (collectively "Private Defendants"), are liable herein because (1) plaintiff is disabled within the meaning of the ADA since he suffers from Becker's and uses a wheelchair, (2) defendants own the building at 141 Livingston Street, which is a place of public accommodation and leases it to the State and City defendants for the purpose of operating a court facility, and (3) defendants have discriminated against plaintiff by failing to remove barriers when it is readily achievable to do so and denying him a full and equal opportunity to enjoy the services defendants provide, i.e., inaccessible bathrooms, inadequate elevators, inaccessible courtrooms, inaccessible jury select rooms, and inaccessible routes.

157.    The defendants are presumptively liable inasmuch as numerous features of 141 Livingston Street violate the 1991 and 2010 ADA Standards for Accessible design.

158.    Moreover, upon information and belief the Private Defendants, are further liable as they have conducted substantial alterations without ensuring that, to the maximum extent feasible, the altered areas are wheelchair accessible, including all areas of primary function in the altered areas.

159.    Upon information and belief and a review of the pubic records on file with the City department of buildings, the defendants have conducted several alterations since 2001 and as recently as August 2016 relating to the judge's benches, conference rooms, etcetera, but have still failed to render their public bathrooms wheelchair accessible, despite such alterations.

160.    As such, plaintiff demands injunctive and monetary relief against the Private Defendants in accordance with their violation of Title III of the ADA.

## AS AND FOR A FIFTH CAUSE OF ACTION –
## VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW

**X.**   **THE CITY AND PRIVATE DEFENDANTS' FAILURE TO MAKE THE COMPLAINED OF COURTHOUSES WHEELCHAIR ACCESSIBLE, VIOLATES SECTION 296(2)(A) OF THE NEW YORK STATE HUMAN RIGHTS LAW**

161.    Plaintiff repeats and realleges those allegations of the complaint marked and designated herein as paragraphs "1" through "160" with the same force and effect as if herein set forth at length and further alleges that:

162.    Pursuant to section 296(2)(a) of the State HRL, "It shall be an unlawful discriminatory practice for any person…manager…agent or employee of any place of accommodation because of the disability of any person directly or indirectly to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities, or privileges therefor…or that the patronage or custom threat…of having a disability is unwelcome, objectionable, or not acceptable, desired or solicited."

163.    Discriminatory practices under the State HRL include (1) a refusal to remove architectural barriers in exiting facilities where such removal is readily achievable, (2) refusal to make reasonable modifications in policies, practices or procedures when same are necessary to avoid discrimination and (3) refusal to take such steps as are necessary to ensure that no individual with a disability is excluded or denied services because of the presence of auxiliary aids and services.

164.    It is submitted that CLIPPER EQUITY, LLC and 141 LIVINGSTON OWNER, LLC's (hereinafter "Private Defendants") continued ownership of 141 Livingston Street and refusal to remove architectural barriers violates the State HRL. Indeed, the continued failure to remove such barriers presents the view that the Private Defendants feel that having a disability is unwelcome, objectionable, or not acceptable, desired or solicited in the practice of law in general and in 141 Livingston Street.

165.    It is further submitted that the MAYOR and CITY's (hereinafter "City Defendants") maintenance of 141 Livingston street and continued ownership of the Queens Supreme Courthouse, Manhattan Supreme Courthouses, Bronx Supreme and Civil Courthouse, and Staten Island Civil Courthouse, and refusal to remove architectural barriers violates the State HRL.

166.    Indeed, the continued failure to remove architectural barriers presents the view that the City Defendants feel that having a disability is unwelcome, objectionable, or not acceptable, desired, or solicited in the practice of law in general and in the courthouse located within the five boroughs of New York City.

167.    As such, plaintiff demands injunctive and monetary relief against the City and Private defendants in accordance with their violation of the State HRL.

## AS AND FOR A SIXTH CAUSE OF ACTION –
## VIOLATION OF THE NEW YORK STATE CIVIL RIGHTS LAW

**XI.** **THE PRIVATE, CITY, AND STATE DEFENDANTS FAILURE TO MAKE THE COMPLAINED OF COURTHOUSES WHEELCHAIR ACCESSIBLE, VIOLATES SECTION 40-C (2) OF THE NEW YORK STATE CIVIL RIGHTS LAW**

168.    Plaintiff repeats and realleges those allegations of the complaint marked and designated herein as paragraphs "1" through "167" with the same force and effect as if herein set forth at length and further alleges that:

169.    Pursuant to section 40-c (2) of the State CRL, "No person shall, because of…disability…be subjected to any discrimination in his…civil rights…by any person or by any firm, corporation, or institution, or by the state or any agency or subdivision of the state."

170.    The State CRL incorporates the discriminatory practices listed under the State HRL. As such, discriminatory practices under the State CRL also include (1) a refusal to remove architectural barriers in existing facilities where such removal is readily achievable, (2) refusal to make reasonable modifications in policies, practices or procedures when same are necessary to avoid discrimination and (3) refusal to take such steps as are necessary to ensure that no individual with a disability is excluded or denied services because of the presence of auxiliary aids and services.

171.    It is submitted that the Private Defendants' continued ownership of 141 Livingston Street and refusal to remove architectural barriers violates the State CRL, as explained above.

172.    It is further submitted that the City Defendants' and CAJ and STATE (hereinafter "State Defendants") maintenance of 141 Livingston street and continued ownership of the Queens Supreme Courthouse, Manhattan Supreme Courthouses, Bronx Supreme and Civil Courthouse, and Staten Island Civil Courthouse, and refusal to remove architectural barriers violates the State CRL as explained above.

173.    The required notice has been served upon the New York State Attorney General before or at the time of filing this suit as required by section 40-d.

174.    As such, in accordance with section 40-d, plaintiff demands $500 for each violation of the State CRL in the complained of courthouses levied against all defendants, along with injunctive relief against all defendants.

## AS AND FOR A SEVENTH CAUSE OF ACTION –
## VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW

### XII.   THE PRIVATE AND CITY DEFENDANTS' FAILURE TO MAKE THE COMPLAINED OF COURTHOUSES WHEELCHAIR ACCESSIBLE, VIOLATES SECTION 8-107(4)(A) OF THE NEW YORK CITY HUMAN RIGHTS LAW

175.    Plaintiff repeats and realleges those allegations of the complaint marked and designated herein as paragraphs "1" through "174" with the same force and effect as if herein set forth at length and further alleges that:

176.    Pursuant to section 8-107(4)(a) of the City HRL, "It shall be an unlawful discriminatory practice for any person…manager…agent or employee of any place of accommodation because of the disability of any person directly or indirectly to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities, or privileges therefor…or that the patronage or custom threat…of having a disability is unwelcome, objectionable, or not acceptable, desired or solicited.

177.    The City HRL's policy purpose is that it be broadly construed and provide greater protections than any other similar federal or state or local laws.

178.    Discriminatory practices under the City HRL include (1) a refusal to remove architectural barriers in existing facilities where such removal is readily achievable, (2) refusal to make reasonable modifications in policies, practices or procedures when same are necessary to avoid discrimination and (3) refusal to take such steps as are necessary to ensure that no individual with a disability is excluded or denied services because of the presence of auxiliary aids and services.

179.    It is submitted that the Private Defendants in the continued operation of 141 Livingston Street and refusal to remove architectural barriers violates the City HRL.

180.    Indeed, the continued failure to remove such barriers presents the view that the Private defendants feel that having a disability is unwelcome, objectionable, or not acceptable, desired or solicited in the practice of law in general and in 141 Livingston Street.

181.    It is further submitted that the City Defendants in the continued operation of the complained of courthouses in Brooklyn, Queen, Staten Island, Manhattan, and the Bronx and refusal to remove architectural barriers therein violates the City HRL.

182.    Indeed, the continued failure to remove such barriers presents the view that the Private defendants feel that having a disability is unwelcome, objectionable, or not acceptable, desired or solicited in the practice of law in general and in the courthouses located within the five boroughs of New York City.

183.    The required Notice and copy of the complaint as per section 8-502(c) has been served upon the City Commission on Human Rights.

184.   As such, plaintiff demands injunctive and monetary relief against the Private and City defendants in accordance with their violation of the City HRL.

## AS AND FOR A EIGHTH CAUSE OF ACTION –
## DEMAND FOR COMPENSATORY DAMAGES IN AN
## AMOUNT EXCEEDING TEN MILLION DOLLARS

### XIII.   THE DEFENDANTS HAVE DAMAGED PLAINTIFF IN A SUM EXCEEDING $10,000,000 AND PLAINTIFF IS ENTITLED TO COMPENSATORY DAMAGES FOR SAME

185.   Plaintiff repeats and realleges those allegations of the complaint marked and designated herein as paragraphs "1" through "184" with the same force and effect as if herein set forth at length and further alleges that:

186.   The Private, City, and State Defendants' violations of the Federal disability laws (ADA and RA) and Equal Protection, and the City and Private Defendants' violation of State, and City disability laws, have adversely affected the plaintiff to the extent that he is discriminated against, suffered mental anguish, embarrassment, reputation harms, and is consistently humiliated by the defendants.

187.   As such plaintiff demands judgment in an amount exceeding ten million dollars.

## AS AND FOR A NINTH CAUSE OF ACTION –
## DEMAND FOR COSTS AND DISBURSEMENTS

### XIV.   THE DEFENDANTS' INACTION AND UNLAWFUL DISCRIMINATORY CONDUCT HAS REQUIRED PLAINTIFF TO COMMENCE THE INSTANT ACTION, REQUIRING DEFENDANTS TO PAY FOR ANY AND ALL COSTS AND DISBURSEMENTS INCURRED BY PLAINTIFF IN BRINGING AND PROSECUTING SAID ACTION

188.   Plaintiff repeats and realleges those allegations of the complaint marked and designated herein as paragraphs "1" through "187" with the same force and effect as if herein set forth at length and further alleges that:

189.   Pursuant to 42 U.S.C. 12205 and the corresponding provisions of the RA, and State and City laws alleged herein, plaintiff is entitled to recover all reasonable costs, disbursements, expert fees, and expenses sustained as a result of bringing and prosecuting this action.

190.   As such, plaintiff demands judgment including all reasonable costs, disbursements, and expenses incurred from this action.

## AS AND FOR AN TENTH CAUSE OF ACTION – DEMAND FOR ATTORNEY'S FEES

**XV.** **THE DEFENDANTS' INACTION AND UNLAWFUL DISCRIMINATORY CONDUCT HAS REQUIRED PLAINTIFF TO COMMENCE THE INSTANT ACTION, REQUIRING DEFENDANTS TO PAY FOR ANY AND ALL ATTORNEY'S FEES IN BRINGING AND PROSECUTING SAID ACTION**

191. Plaintiff repeats and realleges those allegations of the complaint marked and designated herein as paragraphs "1" through "190" with the same force and effect as if herein set forth at length and further alleges that:

192. Pursuant to 42 U.S.C. 12205, and the corresponding provisions of section 504, and State and City laws as alleged herein, plaintiff is entitled to a reasonable attorney's fee.

193. As such, plaintiff demands judgment including a reasonable attorney's fee.

**WHEREFORE,** the plaintiff demands judgment against the defendants, with an Order granting:

A. Declaratory relief, declaring that the defendants have violated the ADA, RA, Equal Protection Clause, State HRL and CRL, City HRL;

B. Permanent Injunctive relief, requiring the Defendants to Remove Structural and Architectural Barriers and Make the Courthouses Located at 141 Livingston Street, Brooklyn, New York, 927 Castleton Avenue, Staten Island, New York, 88-11 Sutphin Boulevard, Queens, New York, 851 Grand Concourse, Bronx, New York, and 60 and 80 Centre Street, New York, New York, Wheelchair Accessible, With Respect to its Lavatories, Courtrooms, Conference Rooms, Chambers, Paths of Travel, and all Other Areas of such courthouses;

C. Compensatory damages in an amount exceeding $10,000,000;

D. Requiring the defendants to pay the plaintiff's costs and disbursements in commencing and prosecuting this action; and

E. Requiring the defendants to pay the plaintiff's attorney's fees in commencing and prosecuting this action.

Dated: June 26, 2018  
Massapequa, New York

Caner Demirayak, Esq.  
Plaintiff Attorney *Pro Se*  
P.O. Box 1537  
N. Massapequa, New York 11758  
canerdemirayak@outlook.com  
516-765-0570

TO:

City of New York
c/o Corporation Counsel
100 Church Street
New York, New York 10007

Chief Administrative Judge Lawrence Marks
25 Beaver Street, Room 852
New York, New York 10004
& c/o Office of the Attorney General
28 Liberty Street, 16th Floor
New York, New York 10005

Clipper Equity, LLC
P.O. Box 190-407
Brooklyn, New York 11219

Mayor Bill de Blasio
c/o Corporation Counsel
100 Church Street
New York, New York 10007

State of New York
c/o Office of the Attorney General
28 Liberty Street, 16th Floor
New York, New York 10005

141 Livingston Owner, LLC
c/o Clipper Equity, LLC
4611 12th Avenue, Suite 1L
Brooklyn, New York 11219

**CANER DEMIRAYAK, ESQ.**
**P.O. Box 1537**
**N. Massapequa, New York 11758**
**516-765-0570 | canerdemirayak@outlook.com**

June 26, 2018

Hon. Barbara Underwood
New York State Attorney General
28 Liberty Street
New York, New York 10005
ATTN: Civil Rights Bureau

**NOTICE OF STATE CIVIL RIGHTS LAW CLAIM IN ACCORDANCE WITH NYS CIVIL RIGHTS LAW SECTION 40-d**

Dear Attorney General Underwood:

Pursuant to N.Y.S. Civil Rights Law section 40-d, please take notice that I am pursuing a New York State Civil Rights Law claim against Clipper Equity, LLC, 141 Livingston Owner, LLC, Mayor Bill de Blasio, City of New York, Chief Administrative Judge Lawrence Marks, and State of New York, for disability discrimination at the buildings located at 141 Livingston Street in Brooklyn, 927 Castleton Avenue in Staten Island, 88-11 Sutphin Boulevard in Queens, 851 Grand Concourse in the Bronx and 60 and 80 Centre Street in Manhattan. The suit is venued in the United States District Court for the Eastern District of New York in Brooklyn and is styled as Caner Demirayak v. Bill de Blasio, et al. I am seeking $500 for each violation, monetary damages, and injunctive relief to remedy the violations of the New York State Civil Rights Law.

Very truly yours,

Caner Demirayak, Esq.

## CANER DEMIRAYAK, ESQ.
### P.O. Box 1537
### N. Massapequa, New York 11758
### 516-765-0570 | canerdemirayak@outlook.com

June 26, 2018

New York City Commission on Human Rights
25 Chapel Street, Suite 1001
Brooklyn, New York 11201

## NOTICE OF CITY HUMAN RIGHTS CLAIM

Dear Commission:

I am pursuing a City Human Rights law claim against Clipper Equity, LLC, 141 Livingston Owner, LLC, Mayor Bill de Blasio and City of New York for disability discrimination at the buildings located at 141 Livingston Street in Brooklyn, 927 Castleton Avenue in Staten Island, 88-11 Sutphin Boulevard in Queens, 851 Grand Concourse in the Bronx and 60 and 80 Centre Street in Manhattan. The case is venued in the United States District Court for the Eastern District of New York in Brooklyn and styled as Demirayak v Bill de Blasio, et al.

Very truly yours,

Caner Demirayak, Esq.